UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x

ROBERT WEEKES, Individually, and On
Behalf of All Others Similarly Situated,

                              Plaintiff,

      vs.

THE OUTDOOR GEAR EXCHANGE, INC.,

                          Defendant.

——————————————————— x

Civil Action No.: 1:22-cv-01283-ER

## **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S** <u>**MOTION TO DISMISS**</u>

## TABLE OF CONTENTS

**Pages**

I.   INTRODUCTION………………….…………………………………………...1

II.  STATEMENT OF FACTS……………………………………………………...3

III. LEGAL STANDARDS………………………………………………………...4

    A.  Standard On a Motion Pursuant to
    Fed. R. Civ. P. 12(b)(1)..……………………………………………………5

    B.  Standard for Article III Standing …………………………………………5

    C.  Standard on a Motion Pursuant to
    Fed R. Civ P. 12(b)(6)..………………………………………………………6

    D.  Standard on a Motion to Transfer Venue………………………………7

IV.  ARGUMENT……………………………………………………………….. 7

    A. The FACAC Properly Pleads an ADA Claim ………..………..……....7

    B. The Court has Subject Matter Jurisdiction ….………..………..……...8

        i.      The FACAC properly pleads an
        "injury-in-fact"........………………………………….......8

    C. Plaintiff Need Not Request Alternate
    Accommodation"........…………………………………………….......11

        i.  Requesting an alternative accommodation is not required…...11

    D.  *Calcano v. Swarovski* is Inapposite..........………… …………….......14

        i.      Calcano's standing analysis was limited to whether there was
        "imminent" injury, not the "actual" injury alleged in this
        case …………………………………………………….......15

        ii.     Plaintiff has sufficiently established standing by showing that
        he suffered an "imminent" injury in fact……………………..19

    E. Venue Should Remain in the S.D.N.Y………………………………..20

        i.      Convenience of Witnesses…………………………………21

ii.      The Location of Relevant Documents…………………………..22

iii.     Convenience and relative means of the parties………………22

iv.      The locus of operative facts…………………………………23

v.       The availability of process to compel attendance……………23

vi.      The forum's familiarity with the governing law………………23

vii.     Trial efficiency and the interests of justice…………………..24

viii.    Defendant's Cases are Distinguishable……………………....24

F.  The Complaint's NYCHRL Claim Survives as Well………...………25

# **TABLE OF AUTHORITIES**

**Pages**

**CASES**

*Aerotel Ltd., v. Sprint Corp.*, 100 F. Supp. 2d 189 (S.D.N.Y. 2000) ............................................. 21

*Allen v. Wright*, 468 U.S. 737, 104 S.CT. 3315, 82 L.Ed. 2d 556 (1984) ...................................... 5

*Arrow v Electronics, Inc., v. Ducommun, Inc.*, 724 F. Supp.264 (S.D.N.Y. 1989) ...................... 23

*Banfield v. UHS Home Attendants*, 96 Civ. 4850 (JFK), 1997 U.S. Dist. LEXIS 8778
(S.D.N.Y. June 23, 1997) .......................................................................................................... 24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 6

*Bullard v. Drug Policy All.*, 18 Civ. 8081 (KPF), 2019 U.S. Dist. LEXIS 222854
(S.D.N.Y. Dec. 30, 2019) .......................................................................................................... 25

*Calcano v. Swarovski North America Limited,* 36 F.3d 68, 2022 U.S. App LEXIS
15177 (2d Cir. 2022) ..................................................................................... 14, 15, 16, 17

*Camacho v. Vanderbilt Univ.*, 18 Civ. 10694 (KPF), 2019 U.S. Dist. LEXIS 209202
(S.D.N.Y. Dec. 4. 2019) ..................................................................................................... 11, 20

*Chapman v. Piers 1 Imps. (U.S.), Inc.*, 631 F.3d 939(9th Cir. 2011) .................................... 16, 17

*Cont'l Cas. Co. v. Hopeman Bros.*, 17-cv-00688 (ALC), 2018 U.S. Dist. LEXIS
50802 (S.D.N.Y. Mar. 27, 2018) .............................................................................................. 20

*Coultman v. Nat'l R.R. Passenger Corp.*, 857 F. Supp. 231 (E.D.N.Y. 1994) ............................ 23

*Credit Alliance Corp. v. Nationwide Mut. Ins. Co.*, 433 F. Supp 688 (S.D.N.Y. 1977) ............. 24

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006) ...................................................... 21

*Dahl v. Hem Pharmaceutricals Corp.*, 867 F. Supp. 194 (S.D.N.Y. 1994) ................................ 25

*Del-Orden v. Bonobos Inc.*, 17 Civ. 2744 (PAE), 2017 U.S. Dist. LEXIS 209251
(S.D.N.Y. Dec. 20, 2017) .......................................................................................................... 13

*Dickerson v Novartis Corp. & Alcon Labs Inc.*, 315 F.R.D. 18 (S.D.N.Y. 2016) ...................... 22

*Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F. Supp 62
(S.D.N.Y. 1993) ......................................................................................................................... 21

*Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647 (S.D.N.Y 2017) .......................... 13, 16

*Gregory v. Daly,* 243 F.3d 687 (2d Cir. 2001) ............................................................ 4

*Guccione v. Harrah's Mktg. Servs. Corp.*, 06 Civ. 4361 (PKL), 2009 U.S. Dist.
LEXIS 65388  (S.D.N.Y. July 29, 2009) ........................................................ 23

*Haase v. Mallenkrodt, Inc.*, 415 F. Supp 889 (S.D.N.Y. 1976)................................... 25

*Hall v. South Orange,* 89 F. Supp. 2d 488 (S.D.N.Y. 2000) ...................................... 25

*Harty v. W. Point Realty, Inc.*, 477 F. Supp. 3d 163 (S.D.N.Y. 2020) ........................ 11

*Hershman v. UnumProvident Corp.*, 658 F. Supp 2d 598 (S.D.N.Y. 2009) ................. 7

*Izkhaov v. Educ. Comm'n for Foreign Med. Graduates*, 12 Civ 348 (ALC), 2012 U.S.
Dist. LEXIS 96993 (S.D.N.Y. July 10, 2012) .......................................... 22, 24

*Jaquez v. Dermpoint*, 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067 (S.D.N.Y.
May 20, 2021) ....................................................................... 5, 10, 14

*Jones v. Thomas*, 20-CV5581 (LLS), 2020 U.S. Dist. LEXIS 156016 (Aug. 27, 2020)............. 12

*Joyner v. Cont'l Cas. Co.*, 11 CIV, 6005 (JSR), 2012 U.S. Dist. LEXIS 6432
(S.D.N.Y. Jan.6, 2012)................................................................ 23

*Kreisler v. Second Ave Diner Corp.*, 731 F.3d 183 (2d. Cir. 2013)................................ 12, 13, 16

*Lanier v. Bats Exch., Inc.*, 838 F.3d 139 (2d Cir. 2016)........................................ 7

*Lujan v. Defs. Of Wildlife*, 504 U.S. 555 (1992)........................................... 15

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N.Am., Inc.*, 599 F.3d 102 (2d Cir. 2010) ..................... 21

*Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d 63 (2d Cir. 2012) ....................... 4

*Opera Solutions, LLC v. Schwan's Home Serv.*, 13 Civ. 1301 (ALC) (KNF), 2015
U.S. Dist. LEXIS 37995 (S.D.N.Y. Mar. 25, 2015) ...................................... 23

*Paguada v. Athena Allergy, Inc.*, 21-Cv-1245 (KPF) (S.D.N.Y. Feb. 22, 2022) ........................ 19

*Paguada v. Washington Music Sales Center, Inc.*, 1:21-cv-3014 (ALC) (S.D.N.Y.
Jan. 28, 2022)....................................................................... 7, 20

*Pallozzi v. Allstate Life Ins, Co*., 198 F.3d 28 (2d Cir. 1999)...................................... 13

*Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493(9th Cir. 2000) ..................... 7

*Pickern v. Holiday Quality Foods*, 293 F.3d 1133 (9th Cir. 2002) ................................ 16, 17, 18

*Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990)......................................... 24

iv

*Quezada v. U.S. Wings, Inc.*, 20 Civ. 10707, 2021 U.S. Dist. LEXIS 234057
(S.D.N.Y. Dec. 7, 2021).................................................................................... *passim*

*Romero v. 88 Acres Foods, Inc.*, 20-cv-9215 (KMW), 2022 U.S. Dist. LEXIS 9040
(S.D.N.Y. Jan. 18, 2022)................................................................................. 8, 17

*Romero v. Adagio Teas*, 20-CV-7422 (JMF) (S.D.N.Y. Jul. 7, 2021)........................................ 19

*Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573 (S.D.N.Y. 2001) ........................ 21

*Sadat v. State Univ. of N.Y. Upstate Med. Univ.*, No. 19-CV-5053 (JMF), 2019 U.S.
Dist. LEXIS 160258 (S.D.N.Y. Sep. 19, 2019) .................................................. 7

*Sanchez v. Nutco, Inc.*, 20-cv-10107, 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar.
22, 2022) ...................................................................................... 2, 4, 6, 10

*Sanchez v. Welcome Skateboards, Inc.*, 1:21-cv2598 (KPF), Docket No. 35
(S.D.N.Y., Jan. 27, 2022)............................................................... 1,6, 8, 19

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) ....................... 5, 11

*Sullivan v. Study.com LLC*, 18-cv-1939 (JPO), 2019 U.S. Dist. LEXIS 47073
(S.D.N.Y. Mar 21, 2019) ...................................................................... 6

*Thorne v. Boston Mkt. Corp.*, 469 F. Supp. 4d 130 (S.D.N.Y. 2020)........................... 8

*Thorne v. Formula 1 Motorsports, Inc.*, 19-cv-1077 (JPO), 2019 U.S. Dist. LEXIS
220080  (S.D.N.Y. Dec. 19, 2019)............................................................. 6, 8

*TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, (2021) ............................................ 5, 15

*Walker v. Jon Renau Collection, Inc.*, 423 F. Supp. 2d 115 (S.D.N.Y. 2005) ........................... 24

*Walters v. Fischer Skis U.S., LLC*, 6:21-cv-1115 (LEK/ATB), 2022 U.S. Dist. LEXIS
142148 (N.D.N.Y. Aug. 10, 2022) ..................................................... *passim*

*Woldcom Techs., Inc. v. ICC Inteleca Communs.*, 37, F. Supp.3d 633 (S.D.N.Y. 1999)............. 22

*Wu v. Jensen-Lewis Co.*, 345 F. Supp 3d 438 (S.D.N.Y. 2018) ................................. 8, 13

**STATUTES**

42 U.S.C. § 12181 *et seq.* ........................................................................ *passim*

N.Y.C. Admin. Code § 8-101, *et seq.* .................................................................4

**RULES**

Fed. R. Civ. P.  12(b)(1), 12(b)(6) ................................................................................ *passim*

**LEGISLATIVE HISTORY**

101 Cong. Rec. H11452-53 (daily ed. May 22,1990) ..........................................................14

Plaintiff Robert Weekes ("Plaintiff") respectfully submits this memorandum of law in opposition to defendant The Outdoor Gear Exchange, Inc.'s ("Defendant") motion to dismiss ("Motion to Dismiss").

## I.    INTRODUCTION

The First Amended Class Action Complaint ("FACAC") properly pleads all of the facts necessary to support an actionable claim under the American with Disabilities Act of 1990 ("ADA").  This case is substantially similar to *Quezada v. U.S. Wings, Inc.*, 20 Civ. 10707 (ER), 2021 U.S. Dist. LEXIS 234057 (S.D.N.Y. Dec. 7, 2021), an on-point decision issued by this Court but, surprisingly, not cited by Defendant in its Motion to Dismiss.  There, this Court held that a complaint properly pleads an injury in fact where it details the website accessibility barriers that impeded plaintiff's ability to properly use the website (and subsequent deterrence from accessing the website at a later date). *Id.* at *12.

Here, the FACAC does just that.  Indeed, the FACAC pleads with specificity: (i) the dates Plaintiff went on the website – February 10, 2022, and June 15, 2022.  (¶2); (ii) what Plaintiff was prevented from accomplishing on the website – namely, purchasing an Osprey brand daylight carry-on travel bag to transport athletic equipment (¶¶2, 3, 24); (iii) the specific accessibility barriers on the website that prevented Plaintiff from completing a purchase as a sighted New York customer would (discussed *infra*., ¶¶2, 23); and (iv) that Plaintiff intends to use the website in the future – he intends to return to purchase a an Osprey brand daylight carry-on travel bag to transport athletic equipment. (¶24).[1]  These allegations are sufficient to sustain the FACAC's ADA and New York City Human Rights Law ("NYCHRL") causes of action. *See Sanchez v. Welcome*

---

[1]    All "¶_" citations are to paragraphs in the FACAC.

*Skateboards, Inc.*, 1:21-cv2598 (KPF), Docket No. 35 at 7:6-9 (S.D.N.Y., Jan. 27, 2022), attached as Ex. A to the Declaration of Edward Y. Kroub in support of Plaintiff's Opposition to the Motion to Dismiss ("Kroub Decl.").

Since the FACAC meets the relevant pleading standard, Defendant argues that Title III of the ADA required Plaintiff to contact Defendant and provide them with "notice" prior to filing suit. Def. Mem. at 12. This is not a legal requirement of pleading this type of ADA claim –it is only a prerequisite to the filing of a "reasonable accommodation" claim, which is not the basis of this case. ¶¶40-41. Furthermore, the ADA was enacted to prevent discrimination against disabled people. Defendant's Motion to Dismiss does not explain how it would be fair to require a blind person to ask for an alternate accommodation, while a sighted individual is able to purchase the exact same travel bag from his/her home on his/her personal computer. What they are requesting Plaintiff do here is simply unfair and discriminatory.

Moreover, the law does not require Plaintiff to jump through any hurdles before filing a discrimination case. Congress sought to remedy discrimination by preventing places of public accommodation from "[denying] the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges advantages or accommodations" of that entity. 42 U.S.C.S. § 12182(b)(1)(A)(i); 42 U.S.C. §12182(b)(2)(A)(ii); *see also Sanchez v. Nutco, Inc.*, 20-cv-10107, 2022 U.S. Dist. LEXIS 51247, at *5 (S.D.N.Y. Mar. 22, 2022) (noting that "private enforcement suits are the primary method of obtaining compliance with the [ADA]").

Continuing its theme of disregarding the hardships faced by a disabled blind person, Defendant next asks this Court to inconvenience Plaintiff further by transferring this case to the District of Vermont and having Plaintiff, a Manhattan resident, travel to Vermont to try an action he filed in the Southern District of New York. What is more vexing is that the Motion to Dismiss

concedes that the primary factor for a court to consider before transferring a case is the "convenience of the witnesses." *See* Motion to Dismiss at 16.  Apparently, as long as it is convenient for Defendant's employees it does not care to consider the convenience to the blind person on the other end of the aisle.  Plaintiff, who requires special accommodations to travel, should not be required to do so absent compelling circumstances, which Defendant has not demonstrated here.

Since the FACAC properly pleads the necessary elements of an ADA claim, the Motion to Dismiss should respectfully be denied and venue should remain in New York.

## II.    STATEMENT OF FACTS

Defendant is an online retail company that owns and operates the website www.gearx.com ("Website"). ¶¶2, 20.  The products Defendant offers on the Website include camping gear and apparel. ¶20.  Plaintiff is a visually-impaired and legally blind person who uses screen-reading software in order to read website content on his personal computer. ¶¶1, 22.

Plaintiff visited the Website on February 10, 2022 and again on June 15, 2022 in order to purchase an Osprey brand daylight carry-on travel bag. ¶¶2, 3, 24.  Plaintiff was unable to successfully complete his purchase because the Website was not compliant with ADA accessibility standards, containing multiple access barriers that denied Plaintiff full and equal access to the products and services offered there. ¶¶9, 22, 25.  These barriers include, without limitation (collectively, the "Access Barriers"):

- The screen reader fails to read item descriptions, only describing these as "link". This impedes Plaintiff's ability to make an informed decision as a sighted New York customer would;

- The screen reader fails to register when an item has been added to the "cart" function, impeding Plaintiff's ability to complete a purchase as a sighted New York customer would; and

- The screen reader fails to read the size and color of a bag when selected, impeding Plaintiff's ability to make an informed choice as a sighted New York customer would.

¶¶2, 23.

These barriers existed at the time Plaintiff was on the Website and as of the date of the filing of the FACAC. ¶¶3, 22, 25. Plaintiff was denied and continues to be denied equal access to the Website. *See* FACAC, *passim*.  Plaintiff maintains a strong desire, however, to purchase the Osprey brand daylight carry-on travel bag in order help transport his athletic equipment. ¶24. Plaintiff remains expectant that the accessibility barriers will be cured expeditiously, as Plaintiff unequivocally intends to return to the website in order to complete the desired purchase as soon as the accessibility barriers are cured. *See id*.

Based on these allegations, the FACAC adequately alleges Defendant's violations of 42 U.S.C. § 12181, *et seq*. – Title III of the ADA, and the NYCHRL, N.Y.C. Admin. Code § 8-101, *et seq*.

## III.    LEGAL STANDARDS

The Second Circuit cautions courts against prematurely dismissing complaints of civil rights violations. *See Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir. 2001). "As a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012). Similarly, in reviewing standing under the ADA, a broad view of constitutional standing is appropriate because private enforcement suits are the primary method of obtaining compliance with the Act. *Sanchez v. Nutco, Inc*., 20-cv-10107, 2022 U.S. Dist. LEXIS 51247, at *5 (S.D.N.Y. Mar. 22, 2022) (citations omitted).  Courts must afford due respect to Congress's decision to

impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation, including the injury of discriminatory treatment. *See TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2204-05 (2021) (*citing Allen v. Wright*, 468 U.S. 737, 104 S.CT. 3315, 82 L.Ed. 2d 556 (1984)).

### A.    STANDARD ON A MOTION PURSUANT TO FED. R. CIV. P. 12(B)(1)

When examining a Fed. R. Civ. P. 12(b)(1) motion, a court must "take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively." *Bassaw v. United Indus. Corp.*, No. 19-CV-7759 (JMF), 2020 U.S. Dist. LEXIS 157800, at *4 (S.D.N.Y. Aug. 31, 2020) (internal citations omitted). The burden of providing subject matter jurisdiction by a preponderance of the evidence is borne by plaintiff. *Id.* In ADA website-accessibility cases, a complaint need not contain detailed factual allegations to survive a motion to dismiss. *See Jaquez v. Dermpoint*, 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067, at *4 (S.D.N.Y. May 20, 2021). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not presume the truthfulness of the complaint's jurisdictional allegations. *See Quezada v. U.S. Wings, Inc.*, 20 Civ. 10707, 2021 U.S. Dist. LEXIS 234057, at *4 (S.D.N.Y. Dec. 7, 2021).

### B.    STANDARD FOR ARTICLE III STANDING

A plaintiff pleads a sufficient injury for Article III standing by "show[ing] that he suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016). "An injury is particularized when it affect[s] the plaintiff in a personal and individual way. . . [a]n injury is concrete when it actually exists or, put another way, when it is real

rather than abstract. Notably, this is a low threshold, and the plaintiff need not be capable of sustaining a valid cause of action." *Bassaw*, 2020 U.S. Dist. LEXIS 157800, at *6.

To satisfy standing in an ADA website accessibility action, a complaint must allege certain facts, including: (i) when plaintiff attempted to access the website; (ii) what plaintiff was attempting to accomplish on the website; (iii) the specific barriers that prevented plaintiff from gaining access; and (iv) how plaintiff intends to utilize the website in the future. *See Welcome Skateboards, Inc.*, 1:21-cv2598 (KPF), Docket No. 35, at 10:15-21 (S.D.N.Y., Jan. 27, 2022) at 10:15-21.

Likewise, the elements to plead a claim under the NYCHRL in a website-accessibility action are substantively similar to the elements in an ADA claim. The NYCHRL is given an "independent liberal construction analysis in all circumstances" given its similar wording to the ADA, as well as the fact that "federal and state civil rights laws provide a floor below which the City's Human Rights law cannot fall." *Thorne v. Formula 1 Motorsports, Inc.*, 19-cv-1077 (JPO), 2019 U.S. Dist. LEXIS 220080, at *7 (S.D.N.Y. Dec. 19, 2019); *see also Sullivan v. Study.com LLC*, 18-cv-1939 (JPO), 2019 U.S. Dist. LEXIS 47073 (S.D.N.Y. Mar 21, 2019) ("The NYCHRL [is] governed by the same legal standards that courts apply to ADA disability discrimination claims") (citations omitted). Thus, it follows perforce, that because the FACAC properly pleads a claim under the ADA, it also properly states a claim under the NYCHRL. *Id.*

### C. STANDARD ON A MOTION PURSUANT TO FED. R. CIV. P. 12(B)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Nutco*, 2022 U.S. Dist. LEXIS 51247 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff properly pleads such facial plausibility by including "factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id* at \*15.  All reasonable inferences are drawn in the plaintiff's favor.  *Id.*  The court's review is "limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits and any documents incorporated in the complaint by reference." *Id*. To survive dismissal, a "plaintiff must provide the grounds upon which his claims rest through factual allegations sufficient to raise a right to relief above the speculative level." *Lanier v. Bats Exch., Inc*., 838 F.3d 139, 150 (2d Cir. 2016) (internal citations omitted).

### D.    STANDARD ON A MOTION TO TRANFER VENUE

A plaintiff's choice of forum is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer. *See Hershman v. UnumProvident Corp.*, 658 F. Supp 2d 598, 601 (S.D.N.Y. 2009).  This is especially true in ADA cases, where Congress has granted greater discretion with respect to the choice of venue to plaintiffs than it did under the general venue statute to deliberately "support the desire of Congress to afford citizens full and easy redress of civil rights grievances." *Sadat v. State Univ. of N.Y. Upstate Med. Univ.*, No. 19-CV-5053 (JMF), 2019 U.S. Dist. LEXIS 160258, at \*2 (S.D.N.Y. Sep. 19, 2019) (*quoting Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 504 (9th Cir. 2000)).  Venue is proper in a website case in the district where a plaintiff attempted to access a website. *See Paguada v. Washington Music Sales Center, Inc.*, 1:21-cv-3014 (ALC), Ex. B to the Kroub Decl., Docket No. 23, at \*2-\*3 (S.D.N.Y. Jan. 28, 2022) (citations omitted).

### IV.    ARGUMENT

### A.  THE FACAC PROPERLY PLEADS AN ADA CLAIM

As this Court already held, to state a valid claim under Title III of the ADA, a plaintiff must allege that "(1) she is disabled withing the meaning of the ADA; (2) defendant's own, lease

or operate a place of public accommodation; and (3) defendant discriminated against her be denying her a full and equal opportunity to enjoy the services defendants provide." *Wu v. Jensen-Lewis Co*., 345 F.supp.3d 438, 442 (S.D.N.Y. 2018); *see also Thorne v. Boston Mkt. Corp*., 469 F. Supp. 4d 130, 139 (S.D.N.Y. 2020)

The FACAC properly pleads, and Defendant does not dispute the first two elements. Plaintiff is a visually-impaired and legally blind person. ¶1. Additionally, Defendant's website is a place of public accommodation. ¶13; *see e.g.*, *Romero v. 88 Acres Foods, Inc.*, 20-cv-9215 (KMW), 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022). Plaintiff likewise pleads that the barriers on Defendant's website denied his full and equal access to the travel bag offered by Defendant to the general public. ¶22. Defendant's assertion that Plaintiff has failed to sufficiently plead the elements an ADA violation under Rule 12(b)(6) is spurious, as it is completely unsupported by any caselaw. Def. Mem. at 11-12.

### B.  THIS COURT HAS SUBJECT MATTER JURISDICTION

(i)        The FACAC properly pleads an "injury-in-fact"

The FACAC properly pleads that Plaintiff was injured when he encountered Access Barriers that denied him full and equal access ***on multiple occasions*** and now deter Plaintiff on a regular basis from accessing the Website in the future. ¶9, 22-24.

To satisfy standing in an ADA website accessibility action, a complaint must allege: (i) when plaintiff attempted to access the website; (ii) what plaintiff was attempting to accomplish on the website; (iii) the specific barriers that prevented plaintiff from gaining access; and (iv) how plaintiff intends to utilize the website in the future. *See Welcome Skateboard*, Ex. A to the Kroub Decl., at 10:15-21. Specifically in *Welcome Skateboard*, a plaintiff listed seven specific barriers

that prevented his purchase from the Website, which the court held, along with the consequent deterrence to the plaintiff, constituted a sufficient injury to confer standing.

The FACAC meets each of these requirements by describing in detail:

(i)     when Plaintiff visited the Website: February 10, 2022, and, June 15, 2022 (¶2);

(ii)     what Plaintiff was attempting to purchase – namely, an Osprey brand daylight carry-on travel bag for his active lifestyle (¶¶2, 24);

(iii)     the specific website functions that prevented Plaintiff from gaining access: the deficient accessibility function, item details and size function (¶¶2(a)-2(c); 23(a)-23(c)); and

(iv)     how Plaintiff intends on utilizing the website in the future – *i.e.*, to purchase the travel bag for his athletic equipment as soon as the accessibility barriers are cured. (¶24).

As this Court has previously held, pleading specific digital accessibility barriers is sufficient to properly plead injury. In *Quezada v. U.S. Wings*, 20 Civ. 10707 (ER), 2021 U.S. LEXIS 234057 (S.D.N.Y. Dec. 7, 2021), defendant similarly argued that plaintiff had not specified an injury in fact because the complaint "fail[ed] to specify which aspects of the website restricted him from purchasing items." *Id*. at *11. However, this Court found that plaintiff being unable to determine information about defendant's products, such as which sizes were available, and being unable to purchase items, deterred him from visiting the website, constituting an injury in fact as a direct result of defendant's actions. *Id*. at *12. This case is nearly identical, as the access barriers on Defendant's website have deterred Plaintiff from learning about the products sold as well as preventing him the opportunity to purchase them for his athletic hobbies. ¶25.

Likewise, in *Dermpoint,* the court there denied a defendant's motion to dismiss and found an actionable injury where the website contained the following deficiencies: (i) a failure to describe the contents of graphical images; (ii) failure to properly label titles; (iii) a failure to distinguish one page from another; (iv) pages containing multiple broken links and inaccurate headings; (v) an inability to add items to the online shopping cart; and (vi) the website accessibility icon was too hard to find.  *See* 2021 U.S. Dist. LEXIS 96067, at *4-*5; *see also Nutco*, 2022 U.S. Dist. LEXIS 51247, at *5; *see also Walters v. Fischer Skis U.S., LLC*, 6:21-cv-1115 (LEK/ATB), 2022 U.S. Dist. LEXIS 142148, at *9 (N.D.N.Y. Aug. 10, 2022) (finding plaintiff suffered an injury by being denied access to the "Remember" and "Compare" buttons, cart confirmation window, and "Freeride" product page defendant's website.)

The FACAC specifically lists similar access barriers to those recognized in *U.S. Wings*, *Dermpoint* and *Nutco*.  These cases identify the relevant pleading standards. Specifically, the FACAC pleads that the Website contained site elements, such as the item descriptions, cart function and size and color function of the bags, that were not properly labeled by Defendant to integrate with Plaintiff's screen reader. ¶¶2, 23.  Detailing the barriers and how the "website [is] not compatible with [plaintiff's] screen reading software" is sufficient to state both an injury and how it is traceable to a defendant's conduct. *Nutco*, 2022 U.S. Dist. LEXIS 51247 at *5.  Given the similarity of the barriers pled in the FACAC to the barriers alleged numerous other cases, includes those by this very Court Defendant's argument regarding failure to plead an injury is unavailing.[2]

---

[2]    Defendant also implies Plaintiff has not plead a concrete harm because he is a "tester". Def. Mem. at 10. However, the FACAC does not assert anywhere that Plaintiff's visit to the Website was for the purposes of monitoring ADA compliance. He wanted to buy a product.

These barriers caused Plaintiff's concrete injuries – specifically, deterrence from purchasing a product and an inability to make an informed choice. A concrete injury is not necessarily synonymous with a tangible injury. *See U.S. Wings,* 2021 U.S. LEXIS 234057 at *11. (*citing Spokeo*, 578 U.S. at 340). Similarly, "deterrence constitutes an injury under the ADA." *Id.* at *11-*12. Judge Failla similarly noted this standard for a concrete ADA injury:

> [Plaintiff] was unable to access certain portions of the Website's publicly available content because of his disability. Specifically, Plaintiff states that he was unable to navigate the Website because its navigation tabs were incompatible with his screen-reading software, and unable to utilize the Website's net price calculator because that page was also incompatible with his screen-reading software. Plaintiff has also alleged that the Website's access barriers regularly deter him from accessing the website.

*Camacho v. Vanderbilt Univ*., 18 Civ. 10694 (KPF), 2019 U.S. Dist. LEXIS 209202, at *26 (S.D.N.Y. Dec. 4. 2019)

This injury of deterrence is repeatedly pled throughout the FACAC. ¶¶9, 25, *passim*. Likewise, a plaintiff that cannot make an informed choice about the products offered suffers a real threat of future harm. *See Harty v. W. Point Realty, Inc.*, 477 F. Supp. 3d 163, 169-170 (S.D.N.Y. 2020). This too is noted in the FACAC. ¶¶ 2(a)-2(c); 23(a)-(c).

Moreover, a plaintiff who alleges that the visited the website multiple times and has not been able to access its content supports the inference of an ongoing injury and that the subject discriminatory treatment will continue. *Fischer Skis U.S., LLC*, 2022 U.S. Dist. LEXIS 142148, at *10-*11 (citing *Camacho*, 2019 U.S. Dist. LEXIS 209202, at *24). The FACAC likewise pleads this. ¶¶2, 9, 25.

### C. PLAINTIFF NEED NOT REQUEST ALETERNATE ACCOMMODATION

(i)    <u>Requesting an alternative accommodation is not required</u>

Places of public accommodation are required to provide equal access to the disabled, not shunt them into separate systems to access their goods and services. Congress enacted the ADA

as a "clear and comprehensive national mandate to eliminate discrimination against disabled individuals." *Kreisler v. Second Ave Diner Corp.*, 731 F.3d 183, 188 (2d. Cir. 2013).  Specifically, the text of the legislation defines discrimination to include:

> [T]he imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered. 42 U.S.C.S.§12182(b)(2)(A)(i).

Discrimination under the ADA is likewise defined to include:

> [F]ailure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C.S.§12182(b)(2)(A)(ii).

Thus, under the ADA, a plaintiff may base a disability discrimination claim on any (or all) of three theories: (i) intentional discrimination (disparate treatment); (ii) disparate impact; or (iii) failure to make a reasonable accommodation.  *See Jones v. Thomas*, 20-CV5581 (LLS), 2020 U.S. Dist. LEXIS 156016, at *7 (Aug. 27, 2020) (citations omitted).  Importantly, only this last theory requires that a plaintiff request accommodation under 42 U.S.C. §12182(b)(2)(A)(ii).  *Id*; *see also Castillo v. Hudson Theatre, LLC*, 412 F. Supp. 3d 447, 450 (S.D.N.Y. 2019); *cf. Arby's Franchisor*, 2021 U.S. Dist. LEXIS 43838, at *18-*19, (where the court noted a request for a reasonable accommodation is required under for claims under the very next section, 42 U.S.C. 12182(b)(1)(A)(iii)).  The FACAC here properly pleads the first two theories as well as separate causes of action under 42 U.S.C. §12182(b)(1)(A)(i)-(ii) of the ADA. ¶¶ 40-41.  Thus, no reasonable grounds exist for Defendant to assert that plaintiff has failed to properly plead an injury.

Failing to request an alternative, however, does not negate an ADA claim.  Following the path set by the text of the ADA itself the case law is clear – operators of a public accommodation must ensure disabled people have full and equal access to the services they provide. *See Wu v. Jensen-Lewis Co*., 345 F. Supp 3d 438, 442 (S.D.N.Y. 2018).

On this last point, courts have found that a single encounter with an accessibility barrier constitutes unlawful discrimination under the ADA if it impairs a plaintiff's full and equal access. *See Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647, 655 (S.D.N.Y 2017) (finding that even where barriers in question have not completely prevented disabled plaintiffs from visiting a public accommodation, to, plaintiffs still have a valid ADA claim when the barriers render their use of the facility more difficult, burdensome, or dangerous, even if they can visit the facility). This meshes with the fact that the standard for a valid claim under Title III of the ADA is equal access to the public accommodation. *See Del-Orden v. Bonobos Inc.*, 17 Civ. 2744 (PAE), 2017 U.S. Dist. LEXIS 209251, at *19 (S.D.N.Y. Dec. 20, 2017); *see also Pallozzi v. Allstate Life Ins, Co*., 198 F.3d 28, 32 (2d Cir. 1999) (Title III's mandate ensures "full and equal enjoyment of the goods [and] services . . . of any place of public accommodation").  The burden imposed by the ADA is on owners to actively remove barriers and promote equal access for all patrons, not on disabled individuals to address each individual barrier, to their full and equal enjoyment, one at a time. *See Kreisler v. Second Ave Diner Corp.*, 731 F.3d 183, 189 (2d. Cir. 2013).

Even if Defendant's alternate accommodations provide the same functionality as its website (a proposition the Motion to Dismiss fails to support), Plaintiff still suffers discrimination by being shunted into a separate system to access Defendant's products. *Cf*. Def. Mem at 5.

This is supported by the legislative history of the ADA, which posits that public accommodations must be proactive rather than merely reactive. As Congressman Hamilton Fish stated to the House of Representatives during the debate on the ADA:

> Disabled people tend not to even try to use a public accommodation that is inaccessible. . . In general, when participation by disabled persons isn't contemplated at a place or activity, erroneous assumptions about the skills and inclinations of disabled persons are being made. This is why the ADA requires access to all public accommodations.

101 Cong. Rec. H11452-53 (daily ed. May 22,1990) (statement of Rep. Fish).

As noted repeatedly in the FACAC, the barriers on Defendant's website, prevented Plaintiff's full and equal access to purchasing a travel bag. ¶¶ 2, 9, 25. This is sufficient to show discrimination under the ADA. *See Dermpoint*, 2021 U.S. Dist. LEXIS 96067 at *5 ("[t]aken as true, these allegations plausibly show that Dermpoint discriminated against Jaquez by denying him a full and equal opportunity to use its website."). Denial of a full and equal opportunity to take advantage of a public accommodation is discrimination under the full language and text of the ADA, as wells its legislative history. Defendant's argument should therefore be rejected as a blinkered reading of the law.

## D. *CALCANO v. SWAROVSKI* IS INAPPOSITE

Although the Motion to Dismiss does not cite to the recent Second Circuit decision in *Calcano v. Swarovski North America Limited* – which **did not involve website accessibility ADA claims** – Plaintiff addresses it here because the decision did involve an alleged lack of standing accessibility claims concerning Braille gift cards sold at brick-and-mortar locations. *See generally* 36 F.4th 68, 2022 U.S. App. LEXIS 15177 (2d Cir. 2022). The *Calcano* decision is readily distinguishable from this case for a number of reasons.

Indeed, in a case very similar to this one, the first New York District Court to analyze *Calcano*'s application to a **website** accessibility case distinguished the Second Circuit's decision

and maintained that plaintiff had standing to bring an ADA claim. *See Fischer Skis U.S., LLC*, 2022 U.S. Dist. LEXIS 142148.

Moreover, the *Calcano* complaints analyzed by the Second Circuit were poorly drafted and replete with factual errors, such as claiming that Banana Republic sold food and that defendants' stores were located in Manhattan when they were not. *Id*. at *16.  There is no question here that Defendant sells the product Plaintiff was attempting to purchase on the Website and/or that Defendant owns and operates the Website.

(i)    *Calcano's* standing analysis was limited to whether there was "imminent" injury, not the "actual" injury alleged in this case

Additionally, *Calcano* focused on whether a plaintiff has alleged a sufficient *imminent* injury in fact, while here Plaintiff alleges that she has alleged a sufficient *actual* injury.  The Second Circuit's decision in *Calcano* does not impose a requirement to show an "intent to return" for a plaintiff seeking injunctive relief in an ADA case – especially where there is an "actual" injury. *See generally* 36 F.4th 68, 2022 U.S. App. LEXIS 15177.

Rather, to sufficiently "establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual **or** imminent; (ii) that the injury was likely caused by the defendant; and (iii) the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992) (emphasis added)).  The issue here is whether the FACAC sufficiently pleads an injury-in-fact that is actual **or** imminent.  The majority in *Calcano* recognizes that a plaintiff can plead "intent to return" to demonstrate that an alleged prospective injury is imminent. *See* 2022 U.S. App. LEXIS 15177, at *9-*10.  However, the decision repeatedly uses languages

-15-

that makes it clear that this is just a factor that the court can "consider" in ADA cases to determine standing. *See id.* at *10-*11.

Indeed, this Court already addressed this distinction in *U.S. Wings*, 2021 U.S. Dist. LEXIS 234057. Specifically, while this Court noted that mere assertion of intent to return someday when barrier have been rectified has been found insufficient in the context of accessible cards, ADA cases addressing websites have developed a standard of "a reasonable inference that [plaintiff] intended to return to the website." *Id*. at *9. Moreover, a plausible intention or desire does not require a specific date for Plaintiff's return to the website, only that this be plausible given the totality of all relevant facts. *See Fischer Skis U.S., LLC*, 2022 U.S. Dist. LEXIS 142148, at *12 (finding plaintiff's assertion he "needs to update his ski gear and would like to…potentially purchase products and explore the services [offered[ in advance of his next ski trip" sufficient to demonstrate standing.).

The Second Circuit's reasoning in *Calcano* was enrooted in several Ninth Circuit cases, which, when examined deeply are informative in this matter. *See, e.g.*, *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188 (adopting the ruling in *Pickern v. Holiday Quality Foods*, 293 F.3d 1133 (9th Cir. 2002)) (citing *Chapman v. Piers 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 950-51 (9th Cir. 2011)); *Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647, 655 (S.D.N.Y. 2017) (citing *Chapman*, 631 F.3d at 947). In one of the decisions, *Chapman v. Piers 1 Imports (U.S.), Inc.*, the Ninth Circuit makes clear that, when pursuing injunctive relief for a future injury, an ADA plaintiff can show intent to return, **or** "can demonstrate sufficient injury . . . when discriminatory architectural barriers deter him from returning to a noncompliant accommodation." 631 F.3d at 950. The *Chapman* court makes the distinction that, to allege an intent to return, is to allege an

imminent injury, but a plaintiff "deterred from patronizing . . . [defendant's accommodation] suffers the ongoing 'actual injury.'" *Id.* (citing *Pickern*, 293 F.3d at 1138).

While the majority decision in *Calcano* did not focus on this distinction, the concurrence held that "gift cards . . . were not places of accommodations, . . . [but] means by which the plaintiff could access or acquire the defendants' other goods and services." *See* 2022 U.S. App. LEXIS 15177, at *32. In cases such as *Calcano*, not providing an accessible gift card does not deter a plaintiff from returning to a store where the gift card would be valid. While the *Calcano* plaintiffs alleged that a non-compliant gift card keeps them from knowing how much is on the gift card, *etc.*, the plaintiffs could still purchase the gift cards or pay for products in the store using other means. *See id.* at *5. The *Calcano* plaintiffs were not deterred from returning to the store such that they would satisfy an actual injury at the public accommodation itself.[3] But as this Court recognized in *U.S. Wings*, this analysis does not make sense in a website context, where a plaintiff may "easily return to the website should it be made accessible." 2021 U.S. Dist. LEXIS 234057 at *9-*10.

Thus, because of the ready ability to access a website instantly but for barriers on the site, a plaintiff pleading that defendant failed to provide an ADA compliant website can appropriately allege an "actual" injury, as the Plaintiff does in this case. Plaintiff has alleged that Defendant's Website is not ADA-compliant and creates barriers that deter them from returning to their website. The courts have recognized websites as places of public accommodation under the ADA. *See* 42 U.S.C. § 12181(7); *88 Acres Foods.*, 2022 U.S. Dist. LEXIS 9040, at *16. The Ninth Circuit has held that a plaintiff can allege that they have been "deterred from visiting or patronizing [an]

---

[3]    The facts in *Calcano* were also problematic in that plaintiffs there failed to establish why they wanted to purchase gift cards. If it was for their own uses, it was not clear why they would not just have purchased merchandise from the store. If it was to give to another person, it was unclear how the plaintiffs themselves suffered injury if the cards didn't have Braille features.

accommodation" at the point "a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation." *Pickern*, 293 F.3d at 1136-37.  The Ninth Circuit explains that the injury is actual, and continues, "[s]o long as the discriminatory conditions continue, and so long as the plaintiff is aware of them and remains deterred." *See id.* at 1137.  Plaintiff, in this case, has visited Defendant's Website and confirmed that the website remains non-compliant. Plaintiff knows this because he has witnessed these issues firsthand, on numerous occasions (including recently) and he remains deterred from visiting or patronizing the Website – the place of public accommodation – until these barriers are cured.  As such, Plaintiff has sufficiently pled an "actual" injury-in-fact, and the *Calcano* decision, which analyzes an imminent injury, is inapplicable.

Notably, the first New York District Court case to analyze standing in a website accessibility ADA case post-*Calcano* found the Second Circuit's decision distinguishable. The *Fischer Skis* court held that the ADA complaint there had pled sufficient facts – including an actual injury for standing – to survive a motion to dismiss. *See Fischer Skis U.S., LLC*, 2022 U.S. Dist. LEXIS 142148, at *10-*11.  The Court noted that the complaint pled that the functionality of the website there restricted plaintiff's ability to properly navigate it. *See id.* The complaint there, as here, noticed that plaintiff on multiple occasions was unable to potentially purchase products in advance of a ski trip because the website's tabs were incompatible with his screen reading software. *See id*.  Here too, the Court should respectfully find that Plaintiff has standing to assert an ADA claim based on the existence of accessibility barriers found on Defendant's website that prevented him from purchasing a product on the website.

It is important to note that the proposed theory – namely, the application of the ADA to gift cards – proposed by the *Calcano* plaintiffs was a novel and unusual one.  To be sure, S.D.N.Y.

courts have granted motions to dismiss Braille gift card actions on at least 50 prior occasions –
moreover, Plaintiff is unaware of even one S.D.N.Y. decision sustaining an ADA complaint based
on the novel Braille gift card theory proposed in *Calcano*.   That is not the case here, where in the
website-accessibility context and the application of the ADA to websites, there exist a long line of
S.D.N.Y. (and other Circuit) decisions sustaining ADA complaints, including this Court's own
caselaw – and regularly denying defendants' motions to dismiss (similar to the motion brought
here). *See, e.g.*, *U.S. Wings, Inc.*, 2021 U.S. Dist. LEXIS 234057; *Hecht v. Magnanni, Inc.*, 1:20-
cv-05316 (MKV), 2022 U.S. Dist. Lexis 60836 (S.D.N.Y. Mar. 31, 2022); *Nutco*, 2022 U.S. Dist.
LEXIS 51247; *Welcome Skateboards*, Ex. A to the Kroub Decl.; *Paguada v. Athena Allergy, Inc.*,
21-Cv-1245 (KPF) (S.D.N.Y. Feb. 22, 2022); *88 Acres,* 2022 U.S. Dist. LEXIS 9040; *Paguada v.
YieldStreet, Inc.*, 20 Civ. 9254 (LGS), 2021 U.S. Dist. LEXIS 202311, (S.D.N.Y. Oct. 20, 2021);
*Angeles v. Grace Prods*., 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317 (S.D.N.Y. Sept. 23,
2021); *Romero v. Adagio Teas*, 20-CV-7422 (JMF) (S.D.N.Y. Jul. 7, 2021).

(ii)      Plaintiff has sufficiently established standing by showing that he
suffered an "imminent" injury-in-fact

Even assuming *arguendo* that the Court were to require Plaintiff to show imminent injury,
the *Calcano* decision would remain inapposite. *Calcano* was based on an analysis of "intent to
return" that involved considerations inapplicable to website accessibility cases like this one –
namely, the physical distance between defendant's brick-and-mortar location where it sold the gift
cards and the *Calcano* plaintiffs' homes. *See* 2022 U.S. App. LEXIS 15177, at *10-*16 (finding
that the distance between defendant's stores and plaintiffs' residences made it implausible that
plaintiffs wanted to purchase gift cards from defendants).

Given that, here, Defendant's Website may be ***easily accessed*** from Plaintiff's home ***at any time*** (and ***any location*** with Internet access), *Calcano*'s intent to return analysis is inapplicable and the Court should follow the holdings previously issued in various ADA website accessibility cases. *See, e.g.*, *Camacho v. Vanderbilt University*, 2019 U.S. Dist. LEXIS 209202, at *27 (stating that there was a sufficiently "reasonable inference that the [p]laintiff will return to the [w]ebsite" when the plaintiff's "allegations establish that [p]laintiff (i) tried to visit the [w]ebsite on multiple occasions; (ii) has stated motivation for returning to visit the [w]ebsite in the future; and (iii) may easily return to the [w]ebsite should it be made accessible").

### E.  VENUE SHOULD REMAIN IN THE S.D.N.Y.

A plaintiff's choice of forum should be disturbed only when "the balance" of [] factors…is strongly in favor of the defendant." *See, e.g.*, *Cont'l Cas. Co. v. Hopeman Bros*., 17-cv-00688 (ALC), 2018 U.S. Dist. LEXIS 50802, at *24-*25 (S.D.N.Y. Mar. 27, 2018).

In *U.S. Wings*, 2021 U.S. Dist. LEXIS 234057, a non-New York based company-defendant argued that the ADA case was improperly brought in New York and that the Court lacked personal jurisdiction. This Court found it proper to keep the case in New York despite the fact that the Defendant was incorporated and headquartered in Ohio. *Id*. at *16-*17. This Court noted that an interactive website (such as Defendant's here) allowing the purchase and exchange of goods to New York may properly be adjudicated by a District Court in New York. *Id*. at *16. Furthermore, this Court retaining jurisdiction comported with notions of fair play and substantial justice. *Id*. at *21.

In a case substantially similar to this one, a Maryland based company argued that an ADA website-accessibility action should be transferred to Maryland. *See Paguada v. Washington Music Sales Center, Inc.*, 1:21-cv-3014 (ALC) (S.D.N.Y. Jan. 28, 2022).  Judge Carter rejected the

transfer where plaintiff argued that "[t]ravelling required Plaintiff to make additional accommodations due to her disability." *See* Docket No. 20 at p. 7. So too here, requiring Plaintiff to seek additional travel accommodations due to his blindness would be unfair and improper.

Other factors for the Court to consider include:  (1) the convenience of the witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; and (8) trial efficiency and the interests of justice. *See N.Y. Marine & Gen. Ins. Co. v. Lafarge N.Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010).  Defendant does not meet the showing of a burden on any of these remaining factors.

### (i)    Convenience of witnesses

This factor does not favor transfer because Defendant has provided no information regarding the materiality of any purported witnesses. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).  In order to meet the burden regarding this factor, the party seeking transfer must specifically list the evidence and witnesses on which the party intends to rely in the transferee district, along with a general statement of the topics of each witness' testimony. *See Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F. Supp 62, 67 (S.D.N.Y. 1993) (internal citations omitted). This allows a Court to weigh the materiality, nature, and quality of each witness, not merely compare the possible number of witnesses there may be in either venue. *See Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001); *Aerotel Ltd., v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000); *cf.* Def Mem at 17.  Identified witnesses must also have a description of their anticipated testimony to determine whether the information they are likely to provide is material, rather than merely relevant. *See Dickerson v*

*Novartis Corp. & Alcon Labs Inc.*, 315 F.R.D. 18, 19-20 (S.D.N.Y. 2016); *Woldcom Techs., Inc. v. ICC Inteleca Communs.*, 37, F. Supp.3d 633, 638 (S.D.N.Y. 1999) ("Defendant has failed to cite specific evidence located in New Jersey…or to name witnesses located in New Jersey that will be inconvenienced); Def. Mem. at 17.

The Motion to Dismiss is bare and does not provide the specific facts needed to support a transfer to Vermont.  Defendant's affidavit merely states that "our accounting and IT staff and consultants . . . all reside in Vermont…The only persons who have knowledge of the web site mechanics . . . are persons who reside in Vermont." Sherman Aff. at ¶8. Fatally, Defendant's motion to transfer contains no indications of the names, number or subject matter of the testimony of any individual witnesses.

### (ii)        The location of relevant documents

This factor does not weigh in Defendant's favor because technology has erased this burden, as electronic documents, easy copying, and overnight shipping have greatly reduced the costs and increased the convenience to all parties.  *See Izkhaov v. Educ. Comm'n for Foreign Med. Graduates*, 12 Civ 348 (ALC), 2012 U.S. Dist. LEXIS 96993, at *13 (S.D.N.Y. July 10, 2012). Thus, this factor is neutral.

### (iii)       Convenience and relative means of the parties

The burdens and means of the parties in this case are not comparable.  Travelling requires Plaintiff to make additional accommodations due to his disability.  By contrast Defendant is a corporate entity.  Defendant-corporations are deemed to reside, for venue purposes, in any judicial district in which that defendant is subject to the court's personal jurisdiction. 28 USC § 1391(c). Through its Website, Defendant transacts business within the State of New York and is thus subject to personal jurisdiction in New York. ¶8. Having availed itself of the benefits of conducting

business in New York, Defendant cannot then claim to be inconvenienced to litigating in this district. *See Coultman v. Nat'l R.R. Passenger Corp.*, 857 F. Supp. 231 (E.D.N.Y. 1994) (holding that both the convenience and means of the parties, two corporations vs a disabled plaintiff, favored against transfer to the corporations' desired venue); *Joyner v. Cont'l Cas. Co.*, 11 CIV, 6005 (JSR), 2012 U.S. Dist. LEXIS 6432 (S.D.N.Y. Jan.6, 2012) (ruling that transfer was not appropriate for transfer from home district of a plaintiff suffering from physical disability.)

This factor heavily favors Plaintiff and maintaining venue in New York.

### (iv)    The locus of operative facts

The crux of this case is whether Defendant denied Plaintiff, a New York resident, is able to use Defendant's Website in New York as other sighted New York customers can. ¶30. Courts traditionally give significant weight to the locus of the operative facts of the case, looking to where the site of events from which the claim arises. *Guccione v. Harrah's Mktg. Servs. Corp*., 06 Civ. 4361 (PKL), 2009 U.S. Dist. LEXIS 65388, at *28 (S.D.N.Y. July 29, 2009).

### (v)    The availability of process to compel attendance

This factor does not favor Defendant because neither party has identified any unwilling witnesses. *Cf. Arrow v Electronics, Inc., v. Ducommun, Inc.*, 724 F. Supp.264 (S.D.N.Y. 1989) (defendant provided the Court with a list of identified witnesses, and identified the accountants and officers of its company who prepared a disputed balance sheet.); Def. Mem. at 17.

### (vi)    The forum's familiarity with the governing law

Claims under state or municipal law weigh in favor of the original court retain jurisdiction. "It is well-established that courts in a home forum are better suited to construe that forum's state law that courts in other fora." *Opera Solutions, LLC v. Schwan's Home Serv*., 13 Civ. 1301 (ALC) (KNF), 2015 U.S. Dist. LEXIS 37995, at *7 (S.D.N.Y. Mar. 25, 2015) (internal citations omitted).

Moreover, it is logical to try the action here given the similarities between the New York City Human Rights Law and the Americans with Disabilities Act described *supra*.  The two causes of action cannot be separated, as they are based on the same facts and the evidence presented will be the same for each. *See Banfield v. UHS Home Attendants*, 96 Civ. 4850 (JFK), 1997 U.S. Dist. LEXIS 8778, at *6 (S.D.N.Y. June 23, 1997); *cf. Credit Alliance Corp. v. Nationwide Mut. Ins. Co.*, 433 F. Supp 688 (S.D.N.Y. 1977); Def. Mem. at 18 (granting transfer because the disputed insurance policy was governed by Virginia law). As such, this factor favors New York.

### (vii)    Trial efficiency and the interests of justice

At base, justice requires this case to be tried in New York. New York has a localized interest in deciding this case because the allegations involve injuries suffered in New York by a New York citizen, particularly one who has unique difficulties traveling. *See Izkhaov*, 2012 U.S. Dist. LEXIS 96993, at *16. Given that Defendant has provided no compelling justification, other than its own convenience, transfer is unjustified and unwarranted.

### (viii)    Defendant's Cases are Distinguishable.[4]

The cases defendant cites in support of its motion to transfer venue are all factually inapposite, showing a "kitchen sink" approach to removing this case from this district. Def. Mem. at 16-18. For example, in *Walker v. Jon Renau Collection, Inc.,* 423 F. Supp. 2d 115 (S.D.N.Y. 2005), the defendant named two witnesses who would testify in a patent infringement action. Defendant here has not named any witnesses here.

---

[4]    *Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990), cited at Def. Mem. 17, does appear to have *any* relevance to this case, as it is a trademark infringement action where no change of venue was sought.

So too *Hall v. South Orange,* 89 F. Supp. 2d 488 (S.D.N.Y. 2000) has no bearing on this case, as it was a false imprisonment suit where venue was transferred because the plaintiff was detained for several hours in New Jersey. *See also Haase v. Mallenkrodt, Inc.*, 415 F. Supp 889 (S.D.N.Y. 1976) (transfer was appropriate because plaintiff, a New York resident, was injured in New Jersey, had the incident investigated by New Jersey police and a federal safety inspector based in New Jersey.). Unlike in those cases, there is no allegation that Plaintiff has any connection to the state of Vermont. Likewise, *Dahl v. Hem Pharmaceuticals Corp.*, 867 F. Supp. 194 (S.D.N.Y. 1994) involved a related case pending in Nevada. Def. Mem. at 18. No such parallel case exists here. Defendant has cited to unconnected cases and, therefore, its arguments should be disregarded as distinguishable.

## F.  THE COMPLAINT'S NYCHRL CLAIM SURVIVES AS WELL

For the reasons discussed above, Defendant's attacks on Plaintiff's New York City claims should also fail. Defendant asserts that the Court must likewise dismiss the New York City claims because Plaintiff lacks standing or a valid federal claim. Def Mem at 10. However, as detailed *supra*, Defendant has not demonstrated sufficient grounds upon which to obtain dismissal of the ADA claim at issue in this action under either 12(b)(1) or 12(b)(6). *See Bullard v. Drug Policy All.*, 18 Civ. 8081 (KPF), 2019 U.S. Dist. LEXIS 222854, at *23-*24 (S.D.N.Y. Dec. 30, 2019).

For the reasons set forth above, the Motion to Dismiss should respectfully be denied.

DATED:  New York, New York           **MIZRAHI KROUB LLP**
        August 15, 2022

                                          /s/ Edward Y. Kroub
        _____
                        EDWARD Y. KROUB

EDWARD Y. KROUB
JARRETT S. CHARO
WILLIAM J. DOWNES
200 Vesey Street, 24th Floor
New York, NY  10281
Telephone:  212/595-6200
212/595-9700 (fax)
ekroub@mizrahikroub.com
jcharo@mizrahikroub.com
wdownes@mizrahikroub.com

*Attorneys for Plaintiff*