UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT WEEKES, *individually and on behalf of all others similarly situated*,

Plaintiff,

– against –

THE OUTDOOR GEAR EXCHANGE, INC.,

Defendant.

**OPINION & ORDER**

22 Civ. 1283 (ER)

RAMOS, D.J.:

Robert Weekes, a visually impaired and legally blind person, brings this putative class action alleging that he has been denied full and equal access to a website operated by The Outdoor Gear Exchange, Inc. ("OGE") in violation of federal and state law.  Doc. 23.  Before the Court is OGE's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.  Doc. 26.  Alternatively, in the event the motion to dismiss is denied, OGE moves to transfer the venue to the District of Vermont.  *Id.*  For the reasons set forth below, the motions are DENIED.

## I.   BACKGROUND AND PROCEDURAL HISTORY[1]

Robert Weekes, a resident of New York City, is visually impaired.  ¶ 12.  To navigate websites online, he uses a screen-reading software, NonVisual Desktop Access ("NVDA"), one of the most popular software programs currently available.  ¶¶ 1, 16.

---

[1] The following facts are based on the allegations in the First Amended Complaint (the "FAC"), which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  Unless otherwise noted, citations to "¶ __" refer to the FAC, Doc. 23.

OGE is a registered Vermont Corporation and operates an internet website, www.gearx.com (the "Website").[2]  ¶ 13.  The Website offers a variety of products relating to outdoor activity.  ¶ 2.  Additionally, the Website offers a live customer service representative during store hours whom customers can interact with to ask questions regarding OGE's products and to facilitate purchases.  Doc. 26, at 4 (citing to the Website).

On February 10, 2022, Weekes attempted to purchase an Osprey-brand, carry-on bag from the Website to carry his athletic equipment for tennis and karate.  ¶ 2.  However, while using the Website, Weekes experienced three issues.  The screen-reader failed (1) to read the item descriptions, (2) to register when an item had been added to his cart, and (3) to read the size and color of the bag he selected.  *Id.*  As a result, Weekes was unable to complete the purchase.

Weekes filed this action on February 15, 2022.  Doc. 1.  A pre-motion conference was held on June 1, 2022, at which time Weekes was given leave to file an amended complaint by June 15, 2022.[3]  The amended complaint was ultimately filed on June 27, 2022.  Doc. 23.  Prior to filing the amended complaint, on June 15, 2022, Weekes returned to the Website but again experienced the same obstacles and was unable to complete the purchase.  ¶ 2.  Weekes asserts that he intends to return to the Website to complete his purchase as soon as the accessibility issues are resolved.  ¶ 24.  He specifically requests that the Website be compliant with the Web Content Accessibility Guidelines ("WCAG").  ¶¶ 18–19.  WCAG is a set of guidelines developed by the World Wide Web Consortium to ensure that websites are accessible to visually-impaired individuals.  ¶ 18.

---

[2] The Court takes judicial notice of the Website, as it is incorporated by reference into the FAC.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (noting that in resolving a Rule 12(b)(6) motion, a district court may consider documents integral to the complaint that are incorporated by reference).

[3] Two extensions were granted for the plaintiff to file the FAC.  Docs. 19, 22.

Weekes alleges that the failure of the Website to accommodate his visual impairment discriminates against him, and others similarly situated, on the basis of disability in violation of Title III of the Americans with Disabilities Act ("ADA") and the New York City Human Rights Law ("NYCHRL").  ¶ 4.  Weekes seeks both declaratory and injunctive relief as well as compensatory damages against OGE.  ¶¶ 34, 52.

On July 25, 2022, OGE filed the instant motion to dismiss pursuant to Federal Rules of Civil Procedure Rule 12(b)(1) and (6) for lack of standing and failure to state a claim.  Doc. 26.  Alternatively, OGE moves to change venue from this Court to the District of Vermont pursuant to 28 USC § 1404(a).  *Id.*

## II.    LEGAL STANDARD

### *FRCP 12(b)(1)*

When the issue before the Court involves a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), the Court must consider the Rule 12(b)(1) motion first because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Chambers v. Wright*, No. 5 Civ. 9915 (WHP), 2007 WL 4462181, at *2 (S.D.N.Y. Dec. 19, 2007) (internal quotation marks and citation omitted); *see also Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd*, 496 F. App'x 131 (2d Cir. 2012).

Pursuant to Rule 12(b)(1), the Court must dismiss a case for lack of subject matter jurisdiction if the Court "lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  The party asserting subject matter jurisdiction bears the burden of establishing that jurisdiction exists by a preponderance of the evidence.  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d

Cir. 2008) (quoting *Makarova*, 201 F.3d at 113).  The Court accepts all material factual

allegations in the complaint as true, *id.* (quoting *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164,

171 (2d Cir. 2006)), but it does not presume the truthfulness of the complaint's jurisdictional

allegations, *Frisone v. Pepsico, Inc.*, 369 F. Supp. 2d 464, 469–70 (S.D.N.Y. 2005) (quoting

*Augienello v. Fed. Deposit Ins. Corp.*, 310 F. Supp. 2d 582, 588 (S.D.N.Y. 2004)).  When

evaluating a Rule 12(b)(1) motion, the Court may consider evidence outside of the pleadings to

resolve the disputed jurisdictional fact issues.  *Zappia Middle E. Constr. Co. Ltd. v. Emirate of

Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170 (citing

*Makarova*, 201 F.3d at 113).  However, the Court should refrain from drawing inferences in

favor of the party asserting subject matter jurisdiction on a Rule 12(b)(1) motion.  *People United

for Child., Inc. v. City of New York*, 108 F. Supp. 2d 275, 283 (S.D.N.Y. 2000) (citing *Atl. Mut.

Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).

### *FRCP 12(b)(6)*

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss

pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true

and draw all reasonable inferences in the plaintiff's favor.  *See Koch v. Christie's Int'l PLC*, 699

F.3d 141, 145 (2d Cir. 2012).  The Court is not required, however, to credit "mere conclusory

statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive

a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to

relief that is plausible on its face.'"  *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is

facially plausible "when the plaintiff pleads factual content that allows the court to draw the

4

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### Motion to Transfer Venue

When considering a motion to transfer venue, the analysis involves two parts. *Megna v. Biocomp Lab'ys Inc.*, 220 F. Supp. 3d. 496, 497 (S.D.N.Y. 2016). First, the court must determine whether the suit could have been filed in the proposed forum. *Id.* If this is met, the court considers nine factors:

> "(1) convenience of witnesses; (2) convenience of the parties; (3) location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice."

*Id.* at 498 (quoting *Frame v. Whole Foods Mkt., Inc.*, No. 06 Civ. 7058 (DAB), 2007 WL 2815613, at *4 (S.D.N.Y. Sept. 24, 2007)). Furthermore, one factor is not necessarily dispositive of another and each factor will vary based on the circumstances of the case. *Smart Skins LLC v. Microsoft Corp.*, No. 14 Civ. 10149 (CM), 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015).

## III.   DISCUSSION

### 12(b)(1) Motion

To have standing to sue, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). When a plaintiff seeks injunctive relief, as here, he "must also prove that the identified injury in fact

presents a 'real and immediate threat of future injury' often termed 'a likelihood of future harm.'" *Bernstein v. City of New York*, 621 F. App'x 56, 57 (2d Cir. 2015) (quoting *Shain v. Ellison*, 356 F.3d 211, 215–16 (2d Cir. 2004)).  "In reviewing standing under the ADA, 'a broad view of constitutional standing' is appropriate because 'private enforcement suits are the primary method of obtaining compliance with the Act.'"  *Feltzin v. Clocktower Plaza Props., Ltd.*, No. 16 Civ. 4329 (DRH)(AYS), 2018 WL 1221153, at \*3 (E.D.N.Y. Mar. 8, 2018) (quoting *Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 199 (S.D.N.Y. 2016)).

In the context of the ADA, a plaintiff seeking injunctive relief has standing if:  (1) it is reasonable to infer that the discriminatory treatment will continue; (2) it is reasonable to infer that the plaintiff intends to return to the public accommodation; and (3) he alleges past injury under the ADA.  *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (quoting *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013)).  For the reasons set forth below, Weekes has satisfied each of these three elements.

With respect to the first requirement, a plaintiff bringing an ADA claim involving an online forum need only plead facts sufficient to enable a court to "infer [that] the discriminatory treatment will continue when [p]laintiff visits the website again."  *Walters v. Fischer Skis U.S., LLC*, No. 21 Civ. 1115 (LEK/ATB), 2022 WL 3226352, at \*4 (S.D.N.Y. Aug. 10, 2022).  Here, Weekes alleges that after his initial visit and attempt to complete the purchase on February 10, 2022, and after he filed the initial complaint, he revisited the Website on June 15, 2022, but continued to experience the same three accessibility issues.  ¶ 2.  Courts have deemed similar pleadings sufficient to permit a reasonable inference that discriminatory treatment will continue. *See, e.g., Camacho v. Vanderbilt Univ.*, No. 18 Civ. 10694 (KPF), 2019 WL 6528974, at \*10 (S.D.N.Y. Dec. 4, 2019) (denying motion to dismiss and noting that plaintiff's return to website

which had not resolved the access barriers supported a reasonable inference that the

discriminatory treatment would continue).  Moreover, OGE has made no indication that it

intends to update its current technology to accommodate Weekes' screen-reading technology.

Therefore, it is reasonable to infer that the alleged accessibility issues will remain on the

Website.  *Id.*

Where a plaintiff is seeking injunctive relief, as Weekes is here, the second requirement

for standing requires a reasonable inference that Weekes not only intends to return to the

property, but also that there is a "real and immediate threat" of future discrimination against him

by OGE.  *Calcano*, 36 F.4th at 75 (marks and citation omitted).  Weekes must establish that the

"risk of harm is sufficiently imminent and substantial."  *TransUnion LLC v. Ramirez*, 141 S. Ct.

2190, 2210 (2021).  For website cases, "the standard to establish standing is slightly less

burdensome.  The plaintiff need only establish a reasonable inference that he intended to return

to the [w]ebsite."  *Quezada v. U.S. Wings, Inc.*, No. 20 Civ. 10707 (ER), 2021 WL 5827437, at

*3 (S.D.N.Y. Dec. 7, 2021) (marks omitted) (citing *Camacho*, 2019 WL 6528974, at *11).

*Quezada* involved a legally blind plaintiff who visited the defendant's website in order to

purchase clothing but was unable to make the purchase because the website was not compliant

with ADA accessibility standards.  2021 WL 5827437, at *1.  The defendant moved to dismiss,

arguing that Quezada did not allege an intent to return to the website in his initial complaint.  *Id.*

at *3.  The court dismissed the motion, reasoning that the plaintiff had met his burden by stating

that he intended to return to the website if and when the accessibility issues were resolved.  *Id.* at

*4; *see also Sanchez v. NutCo, Inc.*, No. 20 Civ. 10107 (JPO), 2022 WL 846896, at *1–3

(S.D.N.Y. Mar. 22, 2022) (finding on motion to dismiss that a legally blind plaintiff who was

unable to access the defendant's website had satisfied the "intent to return" prong by pleading

that he intended to return to the website once the barriers were resolved); *Chalas v. Barlean's Organic Oils, LLC*, No. 22 Civ. 04178 (CM), 2022 WL 17156838 (S.D.N.Y. Nov. 22, 2022) (holding that a legally blind plaintiff who experienced access barriers on the defendant's website satisfied the intent to return prong by stating her specific purpose in visiting the website).  Like the plaintiffs in *Quezada* and *Sanchez*, Weekes has adequately pleaded his intent to return to the Website.

With respect to the last element, Weekes asserts that he was denied the ability to purchase the Osprey travel bag on the Website.  ¶ 2.  He specifies the nature of the Website's barriers and how his injury is traceable to them.  *Id.*  For example, Weekes alleges that his NVDA screen-reader is unable to read item descriptions on the Website.  *Id.*  Additionally, the screen reader fails to register when items are added to the digital cart, or the size and color of the bag when it is selected.  *Id.*  These three barriers allegedly impeded Weekes from making an informed purchase on the Website.

Other courts in this Circuit have found injury in fact in similar situations.  *See, e.g.*, *Camacho*, 2019 WL 6528974, at *9 (finding that a plaintiff was injured when he attempted to learn more about a college on the college's website but could not navigate the site because it was incompatible with his screen-reading software); *see also Sanchez*, 2022 WL 846896, at *2 (finding injury where the website was incompatible with the screen reader and did not read the price of the item or when it was added to the cart); *Quezada*, 2021 WL 5827437, at *4 (noting that plaintiff experienced concrete injury-in-fact when accessibility issues prevented him from accessing the website which subsequently deterred him from visiting the site in the future).

OGE, however, argues that Weekes did not suffer a concrete injury by using the Website. According to OGE, the ADA allows businesses to choose which auxiliary aids and services to

accommodate those with disabilities at a place of accommodation.  *See* 28 C.F.R. §
36.303(c)(1)(ii) ("A public accommodation should consult with individuals with disabilities
whenever possible to determine what type of auxiliary aid is needed to ensure effective
communication, but the ultimate decision as to what measures to take rests with the public
accommodation, provided that the method chosen results in effective communication."); *see also*
*Calcano*, 36 F.4th 68, 78 (Lohier, J., concurring).  OGE argues that although the Website may
not have been compatible with Weekes' preferred screen-reading software, Weekes has not been
injured because the Website "offers several means of communication for prospective customers,
including a live telephone customer service representative available during store hours, to answer
any question about OGE or the item it sells, and to facilitate a purchase."  Doc. 26, at 4.

  In *Calcano*, five visually impaired plaintiffs sued five defendant brick and mortar stores
for failing to provide Braille gift cards.  36 F.4th at 71.  In a consolidated appeal, the Circuit
affirmed each of the district court's decisions to dismiss the suits for lack of standing because the
complaints failed to raise reasonable inferences of injury.  *Id.* at 75.  While the majority focused
on the intent to return prong of the ADA standing requirements, a concurring opinion focused on
the presence of alternative auxiliary aids—*i.e.*, on-site customer service representatives—which
the plaintiffs failed to utilize.  *Id.* at 75–77, 85–87.

  Contrary to OGE's suggestion, however, the *Calcano* concurrence does *not* stand for the
proposition that a plaintiff website-user has not suffered injury for purposes of standing analysis
when the defendant website offers a reasonable auxiliary aid other than screen-reading software.
Indeed, the concurrence does not address the sufficiency of auxiliary aids in the context of
standing.  Rather, the concurrence addressed the availability of a customer service representative
in its 12(b)(6) analysis, noting that the presence of the customer service representative offered an

alternative auxiliary aid which was not claimed or shown to be ineffective.  *Id.* at 85–87.

Therefore, in addition to not being binding on this court[4], the concurrence does not disturb the

previous analysis used in determining injury for standing purposes, as applied by the District

Courts in *Camacho,* 2019 WL 6528974, at *10, and *Sanchez*, 2022 WL 846896, at *3.

     *Tavarez*, another website case, is distinguishable from the case at hand.  *Tavarez v. Moo*

*Organic Chocolates, LLC*, No. 21 Civ. 9816 (VEC), 2022 WL 3701508 (S.D.N.Y. Aug. 26,

2022).  In *Tavarez*, the court determined that standing was not established because the plaintiff

did "not indicate the frequency of his visits, when each visit occurred, that [the plaintiff had]

some particular interest in purchasing chocolate from the [defendant], or any other facts" for the

court to determine the plaintiff's intent to return.  *Id*. at *4.  However, in this case, Weekes has

stated the frequency of his visits with specific dates and expressed his particular desire to

purchase a particular item from OGE, and his attempts to do so.  ¶ 2.

     Therefore, whether a customer service representative was available on the Website has no

bearing on the Court's standing analysis.  At this stage, Weekes has met his burden of showing

that the accessibility issues he experienced on the Website meet the requirement of injury in-fact.

*See Camacho,* 2019 WL 6528974, at *9.

     ***12(b)(6) Motion***

     To successfully state a claim under Title III, the plaintiff must establish "that (1) he or

she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a

place of public accommodation; and (3) that the defendants discriminated against the plaintiff

within the meaning of the ADA."  *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d. Cir. 2008)

(citing *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d. Cir. 2008)).

---

[4] *See Thompson v. Ridge*, No. 04 Civ. 0429 (RMB)(AJP), 2005 WL 433277, at *10 n.22 (S.D.N.Y. Feb. 25, 2005) (noting that a concurring opinion from the Second Circuit is not binding precedent on the district court).

Weekes satisfies each of these three requirements.  First, Weekes is a visually-impaired and legally blind person.  *¶* 1.  Second, OGE owns and operates the Website, which is a place of public accommodation.  ¶ 2.  *See Tavarez*, 2022 WL 3701508, at *2 (determining that a website, not attached to a physical location, is a place of public accommodation under Title III of the ADA).  Lastly, Weekes has claimed to be discriminated against on two separate occasions, four months apart from each other.  ¶ 2.  Therefore, Weekes has met his 12(b)(6) burden.

OGE argues that Weekes has failed to successfully support each of these elements by failing to notify OGE about his disability and failing to request reasonable accommodation.  Doc. 26, at 11.  To support its argument, OGE relies heavily on *Castillo v. Hudson Theatre, LLC*, 412 F. Supp. 3d 447 (S.D.N.Y. 2019).  In *Castillo*, the court determined that since the plaintiff did not give notice to the defendant of her disability, she did not plead "facts to show that her injury [was] due to the [defendant's] refusal to modify their policies to accommodate her within the meaning of the ADA."  *Id.* at 451.  Furthermore, the court noted that the plaintiff failed to request reasonable accommodation for her disability.  *Id.*  "A plaintiff's request for a reasonable modification is necessary to determine whether the defendant could reasonably provide such modification and whether the defendant's subsequent failure to do so constitutes discrimination." *Id.* (citing *Shaywitz v. Am. Bd. of Psychiatry and Neurology*, 848 F. Supp. 2d 460, 467 (S.D.N.Y. 2012)).

Applying the analysis in *Castillo* to this case, Weekes has still met both of these requirements.  Weekes' original complaint was filed on February 15, 2022.  Doc. 1.  Four months passed between his first complaint and the filing of his amended complaint on June 27, 2022.  Doc. 23.  Therefore, OGE was specifically put on notice of Weekes' disability and the access barriers on the Website and failed to accommodate Weekes and others similarly situated

as evidenced by the fact that the access barriers remained on the Website on June 15, 2022.  ¶ 2.
Additionally, Weekes has pleaded his accommodation request:  a website that is compliant with
the WCAG.  ¶¶ 18–19, 26–27.  However, OGE has declined to make this accommodation and
claimed that it "cannot keep up with the daily product change and then possibly afford to pay for
the types of consulting cost and programming staff that the ideal WCAG guidelines suggest as
the optimal standard for web sites."  Affidavit of Marc Sherman in Support of Motion to Dismiss
("Sherman Aff."), Doc. 26-1 ¶ 3.  Therefore, Weekes has given notice to OGE of his disability
*and* OGE has failed to make a reasonable accommodation for him and others similarly situated.

Furthermore, the concurrence in *Calcano* does not require a different conclusion.  The
concurrence in *Calcano* disagreed with the majority's decision holding that the plaintiffs lacked
standing to bring the suit.  36 F.4th at 78.  Nevertheless, the concurrence noted that granting the
12(b)(6) motion would have been appropriate in the alternative "because the plaintiffs [did] not
plausibly and adequately allege that the defendants denied them adequate auxiliary aids and
services by failing to provide Brailled gift cards."  *Id.* at 83.  The concurrence reasoned that since
the ADA allows places of accommodation to choose the auxiliary aids and services it provides,
"the plaintiffs must adequately allege that Braille [was] the only type of ADA compliant
auxiliary aid or service in [that] context or that the defendants [did] not offer any auxiliary aid or
service." *Id.* Therefore, according to the concurrence, to establish discrimination within the
meaning of the ADA, a plaintiff must either allege that the requested aid is the only type of aid
that is ADA-compliant or that the defendants fail to offer any other auxiliary aid or service.  *Id.*
at 85.

Here, Weekes does not argue that a website compliant with WCAG is the only type of
effective auxiliary aid possible or that OGE did not offer any other aids.  Rather, he argues that

the Website is not compatible with one of the most popular screen-reading software programs for computers and the access barriers he experiences prevent him from making the purchase.  ¶ 16, 23.  Although OGE points to its use of live customer service agents as an alternative auxiliary aid, it has not stated how the customer service agent would be able to effectively communicate with Weekes over the internet or telephone when he is unable to read the screen or if he tried to complete the purchase during non-business hours.  For example, there is no indication from OGE that the sales representative would be using remote access technology which would allow them to read Weekes' screen back to him over the phone.  Furthermore, there appears to be no alternative auxiliary aid if Weekes were to visit the website before or after business hours.

Therefore, although Weekes has not alleged the arguments that are suggested in the *Calcano* concurrence, his complaint is distinguishable from *Calcano* because it is unclear how an online customer service representative will effectively communicate information to Weekes over the phone when he cannot read the screen and wishes to know the item he has selected and added to his cart.  ¶ 2.  In *Calcano*, the plaintiffs simply wanted to know the information on the gift cards such as the balance, terms and conditions of use, and the brands of each card and could have utilized the customer service representative while in person as opposed to over the phone or online.  36 F.4th at 72.

Accordingly, OGE's 12(b)(6) motion is denied.

### Motion to Transfer Venue

The party requesting to transfer venues has the burden of establishing their case.  *Megna*, 220 F. Supp. 3d at 497.  Under the two-fold analysis, the Court will first determine whether the suit could have been filed in the proposed venue and will then analyze the factors to determine whether transfer is appropriate.  *Id*.

First, it is true that this action could have been brought in the District Court of Vermont. OGE is registered as a corporation in Vermont and is therefore subjected to personal jurisdiction in that state.  ¶ 13.

Next, an analysis of the factors from *Frame* as a whole is necessary.  The main factor which OGE argues in favor of venue change is the convenience of the witnesses.  Doc. 26, at 15-18.  "In moving to transfer venue, defendants must identify potential witnesses who would be inconvenienced if the suit were to remain in the forum chosen by the plaintiff, along with a general statement of the substance of the potential witnesses' testimony."  *Frame*, 2007 WL 2815613, at *5.  As stated in the affidavit from Marc Sherman, the founder and majority owner of OGE, the necessary witnesses reside in Vermont.  Sherman Aff. ¶ 7.  However, Sherman has not specifically listed any witnesses by their names or what their testimony will be.  *Id.*

Furthermore, many of the other factors for transfer of venue seem to weigh in favor of maintaining the current venue.  The locus of the facts at issue occurred in this district through the internet and Weekes is a resident of New York.  ¶¶ 1–2.  Although OGE claims to lack the financial ability to maintain a website that is compliant with the WCAG, the corporation has the ability to pay over 100 associates.  Sherman Aff. ¶¶ 3–4.  Therefore, the financial means factor weighs in favor of not transferring the venue.  The final three factors also weigh in favor of maintaining venue in the Southern District of New York as state law will be applied for the NYCHRL claim.  ¶¶ 46–52.  Lastly, in the interest of judicial economy, it would be a burden on the District Court of Vermont to interpret New York law for purposes of resolving this action.

Accordingly, the motion to transfer venue is denied.

**IV.     CONCLUSION**

For the foregoing reasons, OGE's motion is DENIED.  The parties are directed to appear for a telephonic initial pretrial conference on March 15, 2023 at 10:30 a.m.  The parties are directed to dial (877) 411-9748 and to enter access code 3029857#.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 26.

It is SO ORDERED.

Dated:    March 6, 2023
          New York, New York

_____
          Edgardo Ramos, U.S.D.J